**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| **SUZANN MUDAHY-NICHOLSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No.: 1:22cv20019** |
| **v.** | § | |
| | § | |
| **CITY OF MIAMI,** | § | |
| | § | **TRIAL BY JURY DEMANDED** |
| **Defendant.** | § | |
| _____ | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Plaintiff, SUZANN MUDAHY-NICHOLSON, through her undersigned attorneys, and complains of Defendant CITY OF MIAMI and files this Original Complaint showing the Court as follows:

**INTRODUCTION**

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this Complaint and complains of discrimination on the basis of race under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e and 42 U.S.C. § 1981, on the basis of sex under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and on the basis of disability under Americans with Disabilities Act As Amended ("ADAAA"), 42 U.S.C. § 12101 et seq. and in retaliation for her complaints of discrimination on the basis of race under Title VII of the Civil

1

Rights Act, 42 U.S.C. § 2000e and 42 U.S.C. § 1981, on the basis of sex under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and on the basis of disability under Americans with Disabilities Act As Amended ("ADAAA"), 42 U.S.C. § 12101 et seq.

3. This action seeks compensatory and punitive damages, lost wages (past, present, and future), attorneys' fees, taxable court costs, pre-judgment and post-judgment interest.

## PARTIES

4. Plaintiff, Suzann Mudahy-Nicholson, is a resident of Miami, Florida.

5. Defendant, City of Miami, is a municipal governmental entity located in Miami, Dade County, Florida. Defendant may be served with process by mail or in person on its mayor, Francis Suarez, 3500 Pan American Drive, Miami, FL 33133, in accordance with Fed. R. Civ. P. 4(j)(2)(B) and Florida R. Civ. P. 48.111.

## VENUE

6. Venue is appropriate in the United States District Court for the Southern District of Florida, Miami Division, because Plaintiff worked in Miami, Florida, a substantial part of the events or omissions that gave rise to the legal matters in this Complaint happened in Miami, Florida, and the Defendant conducted business in Florida, as required under 28 U.S.C. §1391.

## JURISDICTION

7. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction), under 42 U.S.C. §2000e, *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. §12101, et seq.

8. The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL PREREQUISITES

9. All conditions precedent to the filing of this action have been met by Plaintiff. Plaintiff began her employment for defendant on July 11, 2004, was fired on May 12, 2021, submitted an initial inquiry to the Equal Employment Opportunity Commission ("EEOC") in Miami, Florida, on June 13, 2021, and filed a timely charge with the Miami EEOC office on September 29, 2021.

10. The EEOC office in Miami issued a Notice of Right to Sue letter on October 6, 2021, without investigating, and thereby entitling Plaintiff to file suit based on race, sex, disability, and age discrimination and retaliation against Plaintiff for complaining about race, sex, disability, and age discrimination.

11. This lawsuit has been filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue letter from the EEOC.

## FACTS

12. Defendant City of Miami ("Defendant") has had a contentious relationship with the Black community of Defendant's city over at least the past 60 years.

13. Tensions between Defendant and the Black community have boiled over in rashes of community-wide clashes that Defendant would call "riots" stemming

from Defendant's poor treatment of the city's Black community including violent deaths of Black people at the hands of Defendant's agents.

14. Defendant has been sued previously by the United States under Title VII for Defendant's discriminatory hiring practices against Black people with a lawsuit filed in 1975 (Docket No. 1:75-cv-03096-PAS in S.D. Fla.) that is still being litigated as of the date of filing this Complaint.

15. Plaintiff Suzann Mudahy-Nicholson ("Plaintiff"), a Black woman, worked for Defendant for over 16 years. At the time of her termination, Plaintiff's title was Building Services Assistant IV.

16. Plaintiff also suffered from a disability, which she had told Defendant about.

17. Plaintiff also was openly lesbian, and her co-workers and Defendant knew about it.

18. Plaintiff started working for Defendant at the Customer Service Representative I position in 2004.

19. Plaintiff began working for Defendant six months after accepting the job.

20. Plaintiff was informed by Elizabeth Quiano that department head Chircut did not want a "convicted felon" working in his department.

21. Plaintiff was told further that the reason there was a delay to the start of her employment was because Chircut and supervisor Debra Maye tried to withdraw the offer because of Plaintiff's "background".

22. Plaintiff nonetheless started working for Defendant and quickly rose up the ranks, completing a year probation each time she was promoted.

23. Even still, Plaintiff faced push back from decision makers throughout her tenure.

24. For example, Plaintiff had been ruled ineligible for a promotion she applied for despite meeting all the requirements in 2016.

25. Plaintiff learned that, after she first applied for the position, Defendant deleted and reposted the position to list requirements that previously had not been included.

26. Plaintiff applied again since she still met the listed requirements, but Defendant's representatives manipulated her supervisory experience to be four months short of the listed requirements.

27. Plaintiff filed a grievance and won in 2016, but Plaintiff still was not selected and faced constant insults and reminders from co-workers and supervisors that she was considered unworthy to be there.

28. Insults included "put her where her people are in Liberty City", "aggressive Negra", and the n-word.

29. Plaintiff also suffered two workplace injuries causing additional disabilities within the three years prior to her termination.

30. Plaintiff requested but was denied light duty accommodations despite her non-Black co-workers being granted those accommodations when they were in those situations from 2017 through 2019.

31. On one occasion, Plaintiff, who was in the hospital after a workplace injury in 2017 that left her with little functionality in her right arm, was visited by her supervisor, Jessica Angel-Capo ("Capo"), on May 11, 2017.

32. In front of an attending doctor, Capo began to pressure Plaintiff to come back to work.

33. Capo began to verbally demean Plaintiff by stating that Plaintiff needed to "man up" and "stop acting like a big baby."

34. The attending doctor interrupted and had Capo leave.

35. Still, Defendant's agents pressured Plaintiff to come back sooner than Plaintiff felt ready for, to not request light-duty accommodations by refusing to give that to her, and to adjust Plaintiff's physical therapy appointments to avoid work conflicts, including out-right canceling appointments.

36. Defendant's agents similarly pressured Plaintiff to deprioritize Plaintiff's recovery from a workplace injury in 2018. The effects from both injuries, namely the pain and the limited mobility of her right arm, are still being dealt with today by Plaintiff.

37. Plaintiff also dealt with harassment due to her sex and sexual orientation.

38. On one occasion in 2017, Plaintiff was being harassed by a co-worker named Vanessa Pino ("Pino").

39. Pino, on multiple occasions, would intentionally wave her buttocks in front of Plaintiff's face while Plaintiff was seated at Plaintiff's desk.

40. Plaintiff would tell Pino to stop waving Pino's buttocks in Plaintiff's face multiple times, to no avail.

41. On one occasion in 2017, after Pino did it again, Plaintiff pushed Pino away from her, and Pino stated, "Stop touching my butt, I don't like women."

42. Plaintiff told Pino to stop sexually harassing Plaintiff.

43. Afterwards, Plaintiff was taken aside by supervisors Capo and Daniel Sierra ("Sierra") and verbally reprimanded for the incident, not Pino.

44. Plaintiff's co-workers would also sexually harass Plaintiff and create a hostile work environment with comments like "Yes sir", "Why is your hair like that? You are a woman", and other similar comments throughout Plaintiff's tenure with Defendant from 2017 to Plaintiff's termination in 2021.

45. Capo also kept telling Plaintiff that, whenever Capo wanted Plaintiff to walk with Capo down the hallway, Capo did not want Plaintiff walking behind Capo because Capo did not want Plaintiff to "look at her in a sexual way."

46. Nonetheless, Plaintiff still received satisfactory to positive reviews for her job performance despite everything Plaintiff had to deal with while working for Defendant and was qualified to do her job.

47. Plaintiff requested to be assigned to Code Compliance Inspector on March 2, 2018, and Plaintiff was granted this request on March 28, 2018.

48. Plaintiff noticed that the Code Compliance Department gave Plaintiff multiple tasks, like removing dangerously placed utility pole signs, that would generally be considered highly physically demanding by a reasonable person.

49. On or about Friday February 20, 2021, into the early morning of February 21, 2021, Plaintiff was asked to assist the City of Miami Police Department's COVID-19 curfew compliance efforts at 772 NW 22 Street, in Miami, Florida at a venue identified as "The Museum" or "Museum Miami".

50. Upon arrival at approximately 12:22 am, Plaintiff, accompanied by Defendant's police officers, began documenting an apparent curfew violation at the venue.

51. Plaintiff identified and began to photograph over one-hundred unmasked persons, venue staff collecting admission payments, venue bar selling alcohol without an alcohol-selling license, third-party food trucks, portable restrooms, projected music, VIP seating areas, scantily clad entertainers, and other portable food and drink equipment.

52. Plaintiff requested that the venue staff direct her to the owner or manager of the venue, to ascertain compliance with minimum licensing requirements.

53. Shortly after, Commissioner Alex Diaz De la Portilla ("DLP"), Hispanic and white, approached Plaintiff and began to question Plaintiff about her presence at the venue, making a derogatory remark about Plaintiff while doing so by saying of Plaintiff, "Ella está arrogante sin razon" (which is a common phrase to call Black people).

54. DLP represented himself as a representative of Defendant, wearing a mask with Defendant's official logo on it.

55. While Plaintiff did not recognize DLP, Plaintiff recognized DLP's name a few days later from when she had written a citation for a building DLP owned in 2017. DLP, however, recognized her name from that citation.

56. When Plaintiff told DLP that she knew who he was, DLP disclaimed any management role at the venue, but DLP indicated that he would call the city manager and mayor in the morning, that she and "her kind" were not welcomed at the venue, and that Plaintiff should leave.

57. Plaintiff, unsure how to proceed given that a public official appeared heavily involved in supporting a venue subject to multiple code violations, phoned her immediate supervisor, Eric Nemons ("Nemons"), for advice.

58. Plaintiff, once she got Nemons on the line, requested DLP talk to Nemons, but DLP refused.

59. At some point during the interaction between Plaintiff and DLP while Plaintiff had Nemons on the phone, DLP crowded into Plaintiff's personal space and pushed Plaintiff back.

60. Plaintiff stumbled backward and stepped on an uneven surface or an object.

61. Plaintiff twisted her body and felt a snap in her groin area, which would later turn out to be a sprained hip.

62. After talking to his supervisor, Nemons told Plaintiff to leave the venue and to destroy all the photographic evidence that Plaintiff had collected at the venue because, according to Nemons, "we're supposed to keep our politicians safe."

63. Plaintiff continued talking to Nemons as the venue was eventually cleared, and DLP returned to the VIP area.

64. Plaintiff got off the phone with Nemons and went to exit the venue with the police officers that were there with her at the venue.

65. As shown in video taken by police officer's body camera, Plaintiff was limping as she walked.

66. Plaintiff mentioned to the police officers there about her injury and DLP's conduct that night, but the officers did not write anything down.

67. Plaintiff returned to the office that night and documented, filed, and emailed her photos and findings upon return to her office.

68. Plaintiff did report to another inspector, Jimenez (Hispanic and white), at the office about her pain that she had begun experiencing from the interaction at the venue that night.

69. At 9:40 am on February 21, 2021, Nemons requested Plaintiff to contact him.

70. Nemons expressed his anger at Plaintiff for including DLP's name in her official report about that night, including compromising photos.

71. On February 23, 2021, Plaintiff was reprimanded by Code Coordinator Lazaro-Daniel Orta ("Orta"), Hispanic and white, for an alleged overtime violation.

72. Plaintiff responded and confirmed that she had, in fact, been given proper instructions to work with the Defendant's police department on the night of February 20, 2021, through the early morning of February 21, 2021.

73. Plaintiff provided Orta text messages from Nemons instructing her to work for the police department that night per the police department's request.

74. Approximately one week later, Plaintiff requested to speak with Assistant City Manager Natasha Colebrook-Williams, who had previously been advised by Nemons about the incident involving DLP given that Plaintiff's pain had not subsided.

75. Plaintiff's request was initially ignored, and Plaintiff contacted Nemons to let him know that her pain was still bothering her and that she insisted on seeking formal treatment.

76. Plaintiff initially received the incorrect forms to make her report of her injury claim, but after receiving the correct form and e-mailing her supervisors again about the incident, Plaintiff was finally authorized to seek medical treatment.

77. Plaintiff was forced to retain a workers' compensation attorney following unusual complications like: a refusal to permit her to get a second opinion and a subsequent refusal to fill prescriptions following a second opinion confirming the need for evaluation and treatment.

78. Plaintiff was never granted light duty. Defendant refused to grant light duty despite Plaintiff still dealing with the workplace injury at the time. Plaintiff still deals with the effects of the 2021 workplace injury, along with the other workplace injuries, to this day. And even if she did, Defendant was required by law to engage in the interactive process for accommodations.

79. Defendant justified not accommodating Plaintiff because they stated that the hip injury from the DLP incident was from a pre-existing condition, despite the fact that Plaintiff had never had issues with her hip prior to the incident with DLP.

80. Plaintiff, through counsel, requested that the Defendant's City Manager conduct an independent investigation into the matter, but Plaintiff never got a response to that request.

81. Instead, Defendant's City Attorney office forced Plaintiff to cooperate with its own investigation, which is prohibited by a prior City resolution (since the matter involves a Commissioner), as well as Florida law.

82. Nonetheless, Plaintiff attempted to cooperate with the investigation and submitted a voluntary statement to the Florida Department of Law Enforcement.

83. While this was going on, DLP made public statements deriding Plaintiff's character, calling her a liar, and defamatorily accusing her of fraud.

84. Plaintiff, in response, voluntarily submitted herself to two separate polygraph tests regarding the facts and claims of the incident, both of which she passed.

85. Defendant refused to do any investigation of DLP's conduct on the night of the incident.

86. In fact, Defendant retaliated and investigated Plaintiff instead because she is Black, female, lesbian, over the age of 40 years, and had disabilities, perceived disabilities, and a record of disabilities. Defendant refused to hand over the

bulk of information commonly made available to others in the course of these investigations.

87. Plaintiff, upon information and belief, came to learn that Defendant's employees had been instructed to investigate Plaintiff's exemplary work history for Defendant to find possible ground for termination.

88. During this time, Plaintiff was bumped into by a male co-worker who would later tell Plaintiff that Nemons told the male co-worker to report the bump to human resources to get Plaintiff in trouble because there would be no proof otherwise that it was not an accident.

89. Also during this time, Nemons was promoted to Acting Director of the Department of Code Compliance.

90. Plaintiff accepted a lateral transfer to become Building Services Assistant IV in March 2021.

91. In response to DLP's defamatory remarks about Plaintiff, Plaintiff filed a lawsuit against DLP for defamation.

92. A few days later, Defendant requested that Plaintiff appear for a mandatory interview concerning the allegations.

93. Plaintiff's counsel at the time rejected the request as scheduled due to counsel's scheduling conflicts, the pending lawsuit, and the City resolution prohibiting a City investigation into a City Commissioner.

94. The Defendant's Attorney recognized that the meeting needed to be conducted with Plaintiff's counsel present and offered additional times to do so, but did

not address the lack of legal basis to do the interview. City Manager Arthur Noriega admitted later that they had refused to read the rest of the request of Plaintiff's counsel to reschedule beyond the portion telling them the times Plaintiff's counsel would not be available.

95. Plaintiff's counsel filed a motion for a protective order with the Court shortly after, but Defendant, refusing to wait for counsel's response agreeing to an alternate time or to wait for the court to rule on the motion for protective order, decided to hold the meeting on May 10, 2021.

96. Plaintiff asserted her right to have her counsel present during such a meeting, and because Plaintiff's counsel was unable to attend the meeting due to scheduling conflicts that had been communicated to Defendant, Plaintiff was advised not to attend the meeting.

97. Defendant nonetheless fired Plaintiff on May 12, 2021, for failure to attend the meeting.

98. Plaintiff still deals with the injury she suffered while at the job, although she was still qualified to do her job as Building Services Assistant IV for Defendant.

99. In September 2021, Defendant told Plaintiff's counsel that Defendant requests that Plaintiff either send in a letter of resignation or accept the termination in order to get a settlement. Defendant also requested that Plaintiff never apply to work for Defendant again in order to receive any settlement.

100.      Defendant's listed reason for firing Plaintiff, the failure to attend the meeting, is merely pretext for firing her for her race, sex, and disability.

101.      Defendant perceived Plaintiff as Black throughout Plaintiff's tenure working for Defendant, including at the time of her termination.

102.      Defendant perceived Plaintiff as a woman throughout Plaintiff's tenure working for Defendant, including at the time of her termination.

103.      Defendant perceived Plaintiff as a lesbian throughout Plaintiff's tenure working for Defendant, including at the time of her termination.

104.      Plaintiff had a disability, a perceived disability, or a record of disability that was known to the Defendant due to Plaintiff's various medical conditions that affected her major life activities.

105.      Defendant discriminated against Plaintiff because of Plaintiff's disabilities, perceived disabilities, and/or record of disability by refusing accommodations and terminating her.

106.      Plaintiff has complained about Defendant's multiple incidences of mistreatment due to her race, sex, and disability, perceived disability, and record of disability.

107.         Defendant has a record of mistreating Black employees.

108.         Plaintiff was qualified to do her job at the time of her termination.

## **COUNT I: SEX DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.***

109.     Plaintiff incorporates the allegations made in Paragraphs 1 through 108 herein.

110.     Title VII prohibits employers from discriminating against employees based on their sex.

111.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*

112.     Defendant discriminated against Plaintiff by its discriminatory conduct and by firing her based on her sex as a woman.

113.     Had Plaintiff been a man, she would not have been forced to deal with the discriminatory conduct and been terminated.

114.     As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. §2000e, *et.seq.*, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

115.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has

suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

116.            Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT II: RACE DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.*

117.    Plaintiff incorporates the allegations made in Paragraphs 1 through 116 herein.

118.    Title VII prohibits employers from discriminating against employees based on their race.

119.    Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

120.    Defendant discriminated against Plaintiff by its discriminatory conduct firing her based on her race as Black.

121.     Had Plaintiff not been Black, she would not have been discriminated against and been terminated.

122.     As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. §2000e, *et.seq.*, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

123.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

124.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent her in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT III: RACE DISCRIMINATION UNDER 42 U.S.C. § 1981

125.     Plaintiff incorporates the allegations made in Paragraphs 1 through 124 herein.

18

126.    42 U.S.C. § 1981 prohibits employers from discriminating against employees based on their race.

127.    Title 42 U.S.C. §1981, *inter alia*, protects at-will employees from employment discrimination on the basis of race and national origin because at-will employment in Florida is a form of contract. *Ferrill v. The Parker Group, Inc.,* 168 F.3d 468 (11th Cir. 1999). Defendant offered to pay Plaintiff for her work, and Plaintiff accepted that offer by performing the work. Thus, the parties entered into a contractual arrangement covered by 42 U.S.C. §1981.

128.    Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 1981.

129.    Defendant discriminated against Plaintiff by firing her based on her race as Black.

130.    Had Plaintiff not been Black, she would not have been forced to deal with Defendant's discriminatory conduct and been terminated.

131.    As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. § 1981, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

132.    Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and

maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

133.         Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent her in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT IV: DISABILITY DISCRIMINATION UNDER ADAAA, 42 U.S.C. § 12101, *et seq.*

134.    Plaintiff incorporates the allegations made in Paragraphs 1 through 133 herein.

135.    Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by the ADAAA (42 U.S.C. §12101, et seq.) and terminated Plaintiff because of her disabilities or perceived disabilities.

136.    Plaintiff was regarded by Defendant as having physical and mental impairments.

137.    Plaintiff was a qualified individual who had a disability, who was regarded by Defendant as having a disability at the time of termination, or

who had a record of disability known to Defendant prior to Plaintiff's termination.

138.     Defendant engaged in an adverse employment action against Plaintiff by terminating Plaintiff.

139.     Defendant terminated Plaintiff because of Plaintiff's disability, perceived disability, or record of disability, any, or all, of which were known to Defendant at the time of Plaintiff's termination by the Defendant.

140.     As a direct and proximate result of the aforementioned acts that violated the ADAAA, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

141.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

142.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND

ASSOCIATES, PLLC. to represent her in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT V: RETALIATION FOR COMPLAINTS OF SEX DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.*

143.    Plaintiff incorporates the allegations made in Paragraphs 1 through 142 herein.

144.    Title VII prohibits employers from retaliating against employees for complaining about discrimination based on their sex.

145.    Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq*.

146.    Defendant retaliated and discriminated against Plaintiff by firing her based on her complaints of Defendant's sex discrimination of Plaintiff.

147.    Had Plaintiff not complained about Defendant's sex discrimination, she would not have been terminated.

148.    As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. §2000e, *et.seq.*, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

149.    Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and

maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

150.          Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent her in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VI: RETALIATION FOR COMPLAINTS OF RACE DISCRIMINATION UNDER 42 U.S.C. §2000e, *et. seq.*

151.     Plaintiff incorporates the allegations made in Paragraphs 1 through 150 herein.

152.     Title VII prohibits employers from retaliating against employees for complaining about discrimination based on their race.

153.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 2000e, *et seq.*

154.     Defendant retaliated and discriminated against Plaintiff by firing her for her complaints about Defendant's discrimination based on Plaintiff's race.

155.     Had Plaintiff not been Black or complained about the race discrimination, she would not have been terminated.

156.     As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. §2000e, *et. seq.*, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

157.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

158.                         Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent her in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VII: RETALIATION FOR COMPLAINTS OF RACE DISCRIMINATION UNDER 42 U.S.C. § 1981

159.    Plaintiff incorporates the allegations made in Paragraphs 1 through 158 herein.

160.    42 U.S.C. § 1981 prohibits employers from discriminating against employees based on their race.

161.    Title 42 U.S.C. §1981, *inter alia*, protects at-will employees from employment discrimination on the basis of race and national origin because at-will employment in Florida is a form of contract. *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468 (11th Cir. 1999).  Defendant offered to pay Plaintiff for her work, and Plaintiff accepted that offer by performing the work.  Thus, the parties entered into a contractual arrangement covered by 42 U.S.C. §1981.

162.    Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. § 1981.

163.    Defendant retaliated and discriminated against Plaintiff by firing her for her complaints of Defendant's race discrimination directed towards her.

164.    Had Plaintiff not been Black or complained about the race discrimination, she would not have been terminated.

165.    As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. § 1981, Plaintiff suffered damages, including lost wages, emotional distress, pain and suffering, and attorneys' fees and costs.

166.    Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has

suffered severe emotional distress, pain, and suffering.  The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

167.             Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent her in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VIII:  RETALIATION FOR COMPLAINTS OF DISABILITY DISCRIMINATION UNDER ADAAA, 42 U.S.C. § 12101, *et seq.*

168.    Plaintiff incorporates the allegations made in Paragraphs 1 through 167 herein.

169.    Defendants, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by the ADAAA (42 U.S.C. §12101, et seq.) and terminated Plaintiff in retaliation for complaining about disability discrimination.

170.    Plaintiff was regarded by Defendant as having physical or mental impairments.

171.     Plaintiff was a qualified individual who had a disability, who was
regarded by Defendant as having a disability at the time of termination, or
who had a record of disability known to Defendant prior to Plaintiff's
termination.

172.     Defendant engaged in an adverse employment action against Plaintiff
by terminating Plaintiff.

173.     Defendant retaliated and terminated Plaintiff because of Plaintiff's
complaints regarding Defendant's discrimination of Plaintiff due to Plaintiff's
disability, perceived disability, or record of disability, any, or all, of which
were known to Defendant at the time of Plaintiff's termination by the
Defendant.

174.     As a direct and proximate result of the aforementioned acts that
violated the ADAAA, Plaintiff has suffered loss of wages, both in the past,
present, and future, as well as compensatory damages, including but not
limited to emotional distress.

175.     Defendant's actions were intentional, willful, harsh, oppressive,
reckless, and malicious, and as a further and proximate cause, Plaintiff has
suffered severe emotional distress, pain, and suffering.  The wrongs done by
the Defendant were aggravated by its willfulness, wantonness, and
maliciousness for which the law allows the imposition of exemplary damages.
Plaintiff, therefore, seeks exemplary damages in a sum to be determined by

the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

176.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC. to represent him in these proceedings.  Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## PRAYER FOR RELIEF

177.     WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

a. Back Pay;

b. Pre-Judgment Interest on Back Pay;

c. Front Pay;

d. Compensatory Damages, including but not limited to emotional distress;

e. Punitive Damages;

f. Injunctive and Affirmative Relief;

g. Lost Benefits;

h. Attorney's Fees and Costs;

i. Such other and further relief, at law or in equity, general or special, to which Plaintiff may show he is justly entitled.

## **JURY TRIAL DEMANDED**

178.       Plaintiff demands a trial by jury for all issues so triable.

WHEREFORE, Plaintiff requests damages and reasonable attorney fees from Defendant pursuant to 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. §12101, et seq., and any other applicable authority (statute/law, etc.), to be proven at the time of trial for all compensatory damages, exemplary damages, and attorneys' fees and costs along with any other relief that this Court finds reasonable under the circumstances.

Respectfully submitted,

**COANE AND ASSOCIATES, PLLC**

By:     /s/ Arthur Mandel
**Arthur Mandel**
Florida Bar No. 22753
Email: Arthur.mandel@coane.com
Jeffrey Fedna
Florida Bar No. 1024070
Email: Jeffrey.fedna@coane.com
1250 E. Hallandale Beach Blvd.,
Suite 303,
Hallandale Beach, FL 33009
Phone: (305) 538-6800
Fax: (713) 850-8528
**Coane and Associates, PLLC**

***ATTORNEYS FOR PLAINTIFF***